JOSEPH W. RUSS, ADM'R OF THE ESTATE OF MARGARET B. RUSS AND OTHERS, APPELLANTS, VS. MARTHA J. RUSS, A MINOR, BY HER NEXT FRIEND, B. F. PARKER, APPELLEE.

1. J. R. devised to his wife, during her natural life, certain real and personal estate, remainder over to his children, J. W. R., M. E. and M. B.; also to his three children, J. W. R., M. E. and M. B., *and the heirs of their body*, separate legacies of personal property; also, to his grand-daughter M. J., who is a daughter of a *deceased son*, certain personal property, to be held in trust for her, but if she should die without any child or children living at the time of her death, then to belong to his *three* children, J. W. R., M. E. and M. B., share and share alike; also to his step-son, E. L. M. A., he gives certain personal property, after the death of his widow, and if the said step-son should die *without heirs of the body*, to the said M. E. and M. B., and,

by a subsequent item of the will, declares: "*It is my will, that in the event of the death of J. W. R., M. E. or M. B. without heirs of their body of the* ONE *so dying, that his or her property be equally* DIVIDED *between the* SURVIVORS." M. B. died unmarried and without children: *Held* that from the superadded words and the expressions and circumstances contained in the context of the will, it was the *intention* of testator to fix the period of failure of issue of said M. B. *at the time of her death* without child or children living; that the words "heirs of the body" and "without heirs of the body" are to be construed *children*, to carry out the intent of the testator, and that the limitation over to J. W. R., M. E. and M. B. was good by way of executory devise.

2. The intention of the testator is the polar star to guide in the construction of a will, which intention does not depend on any particular clause standing by itself, but is to be gathered from the whole will, taken together; and where the testator's intention is manifest, it must prevail, if it is not contrary to some positive or settled rule of law.

3. General words in one part of the will may be restrained in cases where it can be collected from any other part of the will that testator did not mean to use them in their general sense.

4. The rule in "Shelly's case" and the rule in executory devise, given, as defined.

This case was decided at Marianna.

Appeal from Jackson Circuit Court.

The following statement of the facts of the case was prepared by Mr. Justice FORWARD :

The bill of complaint in this cause is filed by Martha J. Russ, called in the will, hereinafter inserted, Mary Jane Russ, a minor, by her next friend, against Joseph W. Russ, as administrator of the goods and chattels, lands and tenements, rights and credits of Margaret Belle Russ, deceased, and Henry Humphreys and his wife Mary E. Humphreys.

The bill sets forth that Joseph Russ, the grandfather of oratrix, departed this life in Jackson county, Florida, in the spring of 1849, having first made and executed a last will and testament, which is herein inserted at full length, and is in the following words, viz :

" I, Joseph Russ, being of sound and disposing mind and memory, do make, publish and declare this as my last will and testament, hereby revoking and declaring null and void any and all wills by me at any time heretofore made.

Item 1st. It is my will that all my just debts be paid as soon as my executors may be able to do so, and to enable them to do so more effectually and speedily, I hereby authorise them to sell such portion of my real estate and my negro property as may be necessary for that purpose, at private or public sale.

Item 2d. I give and bequeath unto my wife, Elizabeth Russ, the following slaves: Fuller, Sophia, Susannah, Sue, Abraham, Adam, Calvin, Michael, Jackson and Smart, for and during her natural life, and at her death to be equally divided between my children, Mary E. Russ and Margaret B. Russ. I also give unto my said wife the following slaves: Martha, Mansfield and Mary, for and during her natural life, and at her death it is my will that Martha belong to Joseph W. Russ, Mansfield to Mary E. Russ, and Mary to Margaret B. Russ.

Item 3d. I give and bequeath unto my wife, Elizabeth Russ, the following slaves: Nancy and her four children, John, Angelina and Jane, and Louisa and her child Sophia, for and during her natural life, and, at her death, it is my will that said slaves belong to my step-son, *E. L. M. Ataway*, and if he should depart this life without heirs of his body, then the said slaves to belong to my children Mary E. and Margaret B. Russ.

Item 4th. I give and bequeath unto my wife, Elizabeth Russ, the tract of land on which my residence, near Marianna, is situated, and all that part of the East half of the Northwest quarter of section 4, in township 4, in range 10 North and West, lying East of the branch running through the same: to have and to hold the same for and during her natural life, and, at her death, it is my will that the said land belong to my children Mary E. and Margaret B. Russ, their heirs and assigns forever.

Item 5th. I give and bequeath to my said wife my carriage, a pair of good horses and all my household and

kitchen furniture, and, at her death, to belong to my children Joseph W., Mary E. and Margaret B. Russ.

Item 6th. I give and bequeath unto my son Joseph W. Russ, his heirs and assigns, all that part of the East half of the Northwest quarter of section four, in township four, range ten, North and West, lying West of the branch running through the same; also, the following slaves: Will, Maria and her three children, William, Mary Jane and John; Dorah and her children, Madison, Charlotte, John, Emanuel, Harriet, Hammon, David and Henrietta; Paul and Eliza, and the future increase of the said female slaves.

Item 7th. I give and bequeath unto my daughter, Mary E. Russ, and the heirs of her body, the following slaves: Rebecca, Jack, Linda, Alfred, Judy, Louisa, Betsy, Jacob, Adam, Peter, Oliver, Jim, Dido and her two children Henry and Ebenezer, and Gummer, and the future increase of the said female slaves.

Item 8th. *I give and bequeath unto my daughter, Margaret B. Russ, and the heirs of her body, the following slaves: Penny and her three children, Elsy, Edward and Rebecca; Sarah, Ann. David, Walton, Joe, Little William, Little Paul, Ben, Dinah, Susan, Anderson, Prince and Gib, and the future increase of the said female slaves.*

Item 9th. I give and bequeath unto my wife the tract of land purchased by me of McQuagge and White, to have and to hold the same during her natural life, and, at her death, to belong to my children Margaret B. and Mary E. Russ, their heirs and assigns.

Item 10th. I give and bequeath unto my children, Joseph W. Russ, Mary E. Russ and Margaret B. Russ, all my real estate not herein otherwise disposed of, to be equally divided between them, share and share alike: to have and to hold the same unto them, their heirs and assigns, forever.

Item 11th. I give and bequeath unto my son, Joseph W. Russ, his appointee and assigns, the following slaves, viz:

Mary and her three children, Jim, Sophia and Robert, with future increase of said female slaves; but upon special trust and confidence and for the use and purpose heinafter mentioned; that is to say, that the said Joseph W. Russ shall hold and possess said slaves and their future increase, hire, proceeds and profits of the same for the sole separate use, benefit and behoof of my *grand-daughter, Mary Jane Russ, daughter of William H. L. Russ*, for and during her natural life, free from the use, management and control of any husband she may hereafter have, and independently of said husband, and not in any event to be subject to the debts or contracts of such husband, and that the separate receipt of my said grand-daughter, given while single or married, shall be a legal and sufficient discharge to the said trustee for the proceeds, hire and profits of said slaves, when paid over to her from time to time; and it is further my will and desire that should my said grand-daughter have a child or children living at her death, then and in that case I give and bequeath the said slaves and their increase, hire, proceeds and profits to said child or children, to them and their heirs forever; but if my said grand-daughter should depart this life without any child or children living at the time of her death, then and in that case it is my will and desire that after my grand-daughter's death the said slaves, with their increase, hire, proceeds and profits, to *belong to my children Joseph W. Russ, Mary E. Russ, Margaret B. Russ*, share and share alike; and if my son, Joseph W. Russ, should depart this life without making an appointment of a trustee to carry into effect the object of this bequest, to make which appointment he is hereby expressly and fully authorized, then it is my will and desire that the Judge of the Superior Court of Jackson county, Florida, for the time being, shall appoint a trustee, who shall hold said property upon the same trust and confidence and to and for the same use and purpose as the same is hereby bequeathed to my son Joseph

W. Russ, trustee as aforesaid; and it is my direction that my executors deliver to said trustee the said property when my grand-daughter marries or attains the age of twenty-one years, if my estate should not be sooner settled or divided.

Item 12th. I give and bequeath unto my wife one-third part of my cattle, to be delivered when my estate is divided; and it is my will, that all my stock of cattle, hogs, mules, horses and plantation tools in the hands of my executors, when my estate is divided in pursuance of the next succeeding clause of my will, except the one-third of the cattle, belong to my son Joseph W. Russ.

Item 13th. It is my will, that all my slaves, except those given to my wife and to my son Joseph W. Russ, as trustee, be kept together on my plantation, and that the plantation be continued and farmed as during my lifetime, until my debts are paid, unless my daughters, or either of them, should before that time marry or attain the age of twenty-one years, in which event my executors may deliver to her or them, her or their respective portions, she or they paying her or their respective parts of the debts then due, or giving my executors satisfactory security for such payments.

Item 14th. *It is my will, that in the event of the death of Joseph W. Russ, Mary E. Russ or Margaret B. Russ without heirs of their body of the one so dying, that his or her property be equally divided between the survivors of them.*

Item 15th. It is my will, if any property hereby bequeathed to my children should be sold by me or by my executors for the payment of my debts, that my executors make up to said child or children the amounts so sold by contribution from the portions of the other children.

I hereby appoint my wife, Elizabeth Russ, executrix, and my son Joseph W. Russ and my friend Thomas M. White executors, of this my last will and testament.

In witness whereof, I hereunto set my hand and affix my

seal, this eleventh day of February, in the year of our Lord one thousand eight hundred and forty-five.

Signed, JOSEPH RUSS, [Seal.]

The bill further sets forth, that the said Elizabeth Russ departed this life some time in the year 1857; that at the death of the said Joseph Russ, he left the following children surviving him, viz: Joseph W. Russ, who was appointed one of his executors, Mary E. Russ, who has since intermarried with Henry Humphreys and Margaret Belle Russ.

The bill avers, that the complainant is grand-daughter of the said testator, (Joseph Russ,) being the only child of William H. L. Russ, the son of the said Joseph Russ, who *had departed this life in the lifetime of his father*, the said Joseph Russ, and that *if the said Joseph Russ had died intestate*, the said Joseph W. Russ, Mary E. Russ, Margaret B. Russ and *complainant* (Martha J. Russ) would have been entitled to distribution of his estate; that Elizabeth Russ, the widow, and Joseph W. Russ, Mary E. Russ, now Mrs. Humphreys, and Margaret Belle Russ, *his children, were made the principal objects of his bounty* by his willing and devising to them the bulk of his estate.

The bill further alleges, that since the death of the said testator, the said Margaret B. Russ departed this life a minor, not having attained twenty-one years of age, *and without issue;* that administration upon her estate has been granted to the said Joseph W. Russ; that her estate is in a situation to be distributed, and that distribution should be made between the said Joseph W. Russ, Mary E. Russ and *complainant, as the next of kin and heirs of said Margaret B. Russ, deceased,* they being her heirs and distributees by the laws of Florida.

The bill charges, that some real and personal estate that was willed and devised to the said Margaret B. Russ by her father was sold to pay the debts due by the estate of the said Joseph Russ, deceased, what property or how much

complainant is unable to state; but that, by the terms of the will of the said Joseph Russ, his other children, Joseph W. Russ and Mary E. Humphreys, are bound to contribute to the estate of the said Margaret B. Russ, to make up in value the amount for which said property, given her, was sold.

It is further charged in the bill, that, by the terms of the will of the said Joseph Russ, deceased, the farther of Margaret B. Russ, the said Margaret B. Russ took an *absolute estate* in the slaves bequeathed her by her father's will and named therein, and also in the increase of the females, and that she took an *absolute fee simple* title to the land devised to her by her father's will.

The bill further alleges, that after the death of Elizabeth Russ, the widow of Joseph Russ, deceased, there was some division of the negro slaves and their increase that were given by said will to the said Elizabeth Russ for life, and at her death to be divided between the said Mary E. Humphreys and Margaret B. Russ, but how and in what manner said division was made, or what negroes were allotted to the said Margaret B. Russ, she does not know.

The prayer of the bill is, that said Joseph W. Russ do account, as administrator of Margaret B. Russ, deceased, for all property and assets of the estate of Margaret B. Russ; that the land belonging to Margaret B. Russ at her death be partitioned, by order of the Court, between *complainant*, Joseph W. Russ and Mary E. Humphreys, if it can be done, if not, sold for the purpose of distribution; that a reference be had to a Master for an account between the administrator Joseph W. Russ and the said estate of Margaret B. Russ, and that a distribution of the estate of Margaret B. Russ, deceased, be decreed between *complainant*, Joseph W. Russ and Mary E. Humphreys.

To this bill the defendants demurred, and afterwards the Chancellor made the following decree:

"This cause having been previously argued and submitted

on defendants'. demurrer, and the Court now being fully advised of its decree to be rendered herein, it is considered, ordered, adjudged and decreed that the said demurrer be overruled."

Whereupon the defendants prayed an appeal.

The petition of appeal prays a reversal of said decree for the reasons following:

1. Because your petitioners are entitled to all the real and personal property which came to the said M. B. Russ upon the death of her mother under and by virtue of the will of her father.

2. Because they are entitled to one-half part or interest of the said M. B. Russ in the real estate which was bequeathed to the said M. B. Russ under and by the said will.

3. Because they are entitled to all the property named in the 8th clause of said will by virtue of the limitation contained in the 14th clause of said will.

4. Because their said demurrer ought to have been sustained.

*A. H. Bush* for appellants.

The proper determination of this question renders necessary the consideration of the far-famed and celebrated rule in "Shelley's case." The rule has been thus defined:

"Where the ancestor takes an estate of freehold, either legally or equitably, by deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality to his heirs or the heirs of his body as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." 4 Kent, 216.

If the eighth clause of this will stood by itself, I admit

that it would be within the rule; but I contend that each and every part of this will should be construed together, so that, if possible, each part may be sustained and form together a consistent and connected whole. "*Ut us magis valeat quam pereat.*"

"The intention of the testator is the pole star by which the Court should steer in construing wills;" "and we must take the whole will, and as the former words may be enlarged by the latter, so they may also be sustained and qualified or explained by the latter. We are not bound to give an absolute technical sense to one part of the language and then reject all other parts as inconsistent with it."—4 Kent, 534; Selden vs. King, 2 Call, 89; 1 Jarman on Wills, 427, 428, 437, 411; Covenhoven vs. Shaler, 2 Paige, 122; Lynch vs. Hill, 6 Munf., 114; Doe ex. dem. Wolf vs. Allcock, 1 B. & Ald., 137; Moseley vs. Massey, 8 East., 149; Sisson et al. vs. Seabury, 1 Sumner, 235, where Justice Story sums up as follows: "And I would add, that in all cases of this sort, if the intention be clear, no authority applicable to other wills ought to preclude the Court from carrying that intention into effect, if it can be done without destroying the settled principles of the law;" page, 258.

And our own Supreme Court says, that to arrive at the import of a will, and, that it may be better understood, we may reject expletives and general expressions and throw the three clauses into one.—Merritt and wife vs. Brantley, 8 Flo., 229. Just what should be done in this case. Throw all the clauses into one, or let each clause which affected M. B. Russ be read in connection with the fourteenth clause. It will then be extremely clear what was the intention of the testator.

Again, the rule in "Shelley's case" is so exceedingly technical and artificial in its nature, that whenever there has been any, the slightest, difference of phraseology which would justify a departure from the rule, the Judges have

seized upon the opportunity of deviating from it in order to arrive at the real intention of the testator.—See Chief Justice Wilmot's severe criticism of the rule referred to in Mr. Emmett's argument in Anderson vs. Jackson, 16 Johns. R., 387–8; Doe vs. Collis, 4 Term R., 294, 299. And even Mr. Justice Blackstone was forced to admit that the rule should be controlled by the manifest intention of the testator, for the reason just stated.—Hargrave's Law Tracts, 489; *et vide etiam* Royall vs. Eppes, 2 Munf., 482. And to the same effect are many of the cases hereafter cited.

Again, I contend that the rule in "Shelley's case" does not apply, because the several clauses of this will form executory devises and executory bequests.

"An executory devise is a limitation by will of a future contingent interest in lands, contrary to the rules of limitation of contingent estates in conveyances at law."—4 Kent, 263.

It differs from a remainder in several important respects:

1. It requires no particular prior estate to support it.

2. By it a remainder may be limited after a fee.

3. By it an estate less than a freehold may be limited after a life estate.—2 Blackstone, 173 *et seq.;* 2 Kent, 266, 269, 270.

And to show that this is an executory devise, I refer to the following English authorities: 1 Jarman on Wills, 778, 780; 2 Roper on Legacies, 1528, 1529, 1546, 1548, 1549, 1550; Pinbury vs. Elkin, 1 P. Wms., 432; Higgins vs. Dowler, *ibid.*, 98 and notes; Hughes vs. Sayer, *ibid.*, 534; Pleydell vs. Pleydell, *ibid.*, 747; Forth vs. Chapman, *ibid.*, 666; Stanley vs. Leigh, 2 P. Wms., 686, defines the word "perpetuity;" Sheffield vs. Lord Orrery, 3 Atkyns, 283 *et seq.;* Marsh vs. Marsh, 1 Bro. Ch. R., 293; Davy vs. Burnsall, 6 Term R., 30; Doe vs. Collis, 4 Term R., 294; Porter vs. Bradley et al., 3 Term R., 143; Roe vs. Jeffrey, 7 Term R., 589; Ranelagh vs. Ranelagh, 2 Mylne & Keene, 441;

Crowder vs. Stone, 3 Russell, 217; 3 Cond. Eng. Ch., 369; Atkinson vs. Hutchinson, 3 P. Wms., 258; 4 Meeson & Welsby, 101.

And to the following American cases: 4 Kent, 266; Jackson vs. Chew, 12 Wheaton, 153; 6 Cond. R., 489, which alludes to and comments upon the New York cases; Fosdick vs. Cornell, 1 Johns. Rep., 440; Moffatt vs. Strong, 10 Johns. R., 13; Jackson vs. Staats, 11 Johns. R., 337; Jackson vs. Blanshan, 3 Johnson's Reports, 292, 299; Zollicoffer vs. Zollicoffer, 4 Dev. & Battle, 438; Threadgill vs. Ingram, 1 Iredell, 577; State vs. Norcum, 4 Iredell, 255; Skinner vs. Smart, 3 Iredell, 155; Gordon vs. Holland, 3 Iredell's Eq., 362; Gregory vs. Beasley, 1 Iredell's Eq., 25; Den vs. Cox, 3 Dev., 394; Swan vs. Rascoe, 3 Iredell, 200; Dunn et uxor vs. Bray, 1 Call, 338; Selden vs. King, 2 Call, 72, 89, 90, 91; Royal vs. Eppes, 2 Munf., 479; Cordle's adm'x vs. Cordle's ex'r, 6 Munf., 455, 301–2; Didlake vs. Hooper, Gilmer, 194; Gresham vs. Gresham et al., 6 Munf., 187; Keating vs. Reynolds, 1 Bay, 79; Dott et al. vs. Wilson, *ibid.*, 452; Beard et al. vs. Rowan, 9 Peters, 301; Bell et uxor vs. Hogan, 1 Stewart, 536; Milledge et al. vs. Lamar et al., 4 Dess., 617, 623, 630; Jones vs. Price, 3 Dess., 163; Badger vs. Harden, 6 Rich., 147; Morgan vs. Morgan, 5 Day, 517; Johnson vs. Johnson, 16 Eng. Law and Eq., 554; Spruill vs. Moore, 5 Iredell's Eq., 284; Hart vs. Thompson, 3 B. Monroe, 486 *et seq.;* Newell vs. Newell, 9 S. & M., 56; Rucker vs. Lambkin, 12 S. & M., 230, *ibid.*, 684.

The term "survivors" will be found to rescue the case from the operation of the rule in "Shelley's;" for *it* could not have been intended that the survivor would take only after an indefinite failure of issue, as that might happen long after the death of the survivor. Another reason why a limitation to survivors was treated as an executory devise is, that, after a fee simple, there could be no remainder, except by way of executory devise.—4 Kent, 277, note *a*, 279 and

note, and the cases cited above from 1 Johns. R., 450; 11 Johns. R., 347; 10 Johns. R., 16, 17; 4 Dev. & Bat., 438; 1 Iredell, 577; 1 P. Wms., 534; 2 Mylne & Keene, 441; 3 Russell, 217.

To show that this limitation applies to all the property, I would refer to the following cases: Garland & Watt, 4 Iredell, 287; Jackson vs. Staats, 11 Johns. R., 337; Moffatt vs. Strong, 10 Johns. R., 13; Stopford vs. Stopford, 5 East., 501; Petway vs. Powell, 2 Dev. & Bat. Eq., 308; Zollicoffer vs. Zollicoffer, 4 Dev. & Bat., 438.

This limitation is good, because it is to the survivors only and was intended as a personal benefit to them.—Timberlake and wife vs. Graves, 6 Munf., 174, 301; Gresham vs. Gresham et al., *ibid.*, 187; 2 Roper on Legacies, 1547, 1549; Barksdale vs. Gamage, 3 Rich., 271; Shepherd vs. Shepherd, 2 Rich., 142.

That in a previous part of the will a fee simple was created makes no difference, as will fully appear by reference to the following cases, which have been already cited: 3 Term R., 143; 2 P. Wms., 686, 688, 689; 7 Term R., 589; 12 Wheat., 153; 1 Johns. R., 440; 10 Johns. R., 13; 16 Johns. R., 382; 9 Peters, 301; and see also 1 Jarman on Wills, 781.

Again, we have abolished entails in this State, (Thompson's Digest, 191,) and therefore the rule in "Shelley's case" will not apply. That rule was the offspring of the statute *de donis conditionalibus.* 2 Blackstone, 110 to 112; Anderson vs. Jackson, 16 Johns. R., 387 *et seq.;* 5 Rand., 296, 300, and cases cited above from 4 Dev. & Battle, 438; 4 Iredell, 287.

The rule was applied to personal property by way of implication based upon the statute "*de donis,*" and that statute having been destroyed by our statute abolishing entails, there is now nothing to serve as a foundation on which such implication can rest.

Again: The Courts lay hold with avidity of any circumstance, however slight, and create almost imperceptible shades of distinction, to support limitations over of personal property. Fearne on Executory Devises, by Powell, 186, 239, 259; 4 Kent, 281, 282, 283 and notes; Rhodes vs. Jones, 4 Iredell, 53; Atkinson vs. Hutchinson, 3 P. Wms., 258; Jones vs. Price, 3 Dess., 165; Moffatt vs. Strong, 10 Johns. R., 16; Burnett vs. Bowber, 2 Hill, (S. C.,) 543, 552; Cook vs. Devander, 9 Vesey, 197, 204, and the following references hereinbefore given, viz: 1 P. Wms., 666, 563, 747, 750, 535; 1 Call, 338.

*Yonge, McClellan & Barnes* for appellee.

We insist, in behalf of the appellee, that the rule in Shelley's case, as decided by the Court below, does govern the disposition and limitations contained in the will now before the Court for construction, and that it does appear by the terms of the will that it was the intention of the testator to create an estate tail in the disposition of this property, and that, aside from his apparent intention, the rules of law affix a meaning and signification to the words used in the will that gives an estate tail; that the words used in the 8th clause, viz: " I give and bequeath unto my daughter, Margared B. Russ, and the heirs of her body," are such as to create an estate tail in the first instance, and this, we take it, is so beyond cavil. 4 Kent's Com., 11 and 12.

But it is insisted by the appellants that this clause of the *will* is not to be read by itself, but must be taken in connection with the 14th clause in the will; and, for the present, we will concede that such is the proper reading of the will. Now, does the language used in the 14th clause of the will destroy the estate tail which is clearly created by the language used in the 8th clause? We think not; for we find in the 14th clause the same technical language which creates an estate tail that is used in the 8th clause, in this,

that the words used in the 14th clause are, "in the event of the death of J. W. R., M. E. R. or Margaret B. Russ (the legatee in the 8th clause) without heirs of the body," that the property of the one so dying (which in this case is Margaret B. Russ) is to be equally divided between the survivors.

The same language being used in the 14th clause that is used in the 8th clause, and also in the 7th clause, where property is given to his other daughter, Mary E., indicates that it was the intention of the testator to create an estate tail as to the property given to his daughter, and such intention being repugnant to the rule, the limitation is too remote and therefore void, and the first taker took an absolute property, and, upon her death, passed distributively to her next of kin. Daniels vs. Williamson, 12 Wheaton, 568; 7 Curtis, 362.; Broom's Legal Maxims, 123; 2 Jarman, 418, 444, 448.

But it is insisted by the appellants that the word "survivors," used in the 14th clause, is to be taken in this will as a word superadded to and intended to control the words of indefinite limitation in the 8th clause, "heirs of her body," and, in the 14th clause, "without heirs of the body of the one so dying," and to confine that limitation to children living at the death of Margaret B. and Mary E. Russ. But this cannot be so, according to Chancellor Kent, for he lays it down as a rule, that if the executory limitation, either of lands or chattels, be too remote in its *commencement*, it is void, and cannot be helped by any subsequent event, or by any modification or restriction in the execution of it. 4th Kent's Com., top page 315.

In the case of Fosdick vs. Cornell, 1 John., p. 451, where a limitation was held to be a good executory devise, being controlled by the word "survivors," it is admitted in the opinion of the Court, that if the intention of the testator had appeared in the first instance to give an estate tail, that

that intention would have controlled and the limitation would have been too remote.

It is true it has been held in some instances, that, in a bequest of chattels, slight and unimportant words in the will may be taken hold of to ascertain, where the intention of the testator is not clearly expressed, his intention to limit the estate over.

But this rule could only apply when the intention of the testator is not clearly expressed in any event. The English rule seems to be, and such is the rule of law here, as recognized in the case of Watts, adm'r, vs. Clardy, 2 Flo. Reps., 386, that a devise in fee with remainder over, if the devisee dies without issue or heirs of the body, is a fee cut down to an estate tail, and the limitation over is void by way of executory devise as being too remote and founded on indefinite failure of issue. Chancellor Kent says than the American authorities are to the same effect. 4 Kent's Com., 276, (9 Paige, 265.) Chancellor Kent further remarks, that the English rule has been adhered to, and has not been permitted, either in England or in this country, to be affected by such variation in the limitation over as "dying without leaving issue;" nor, if the devise was to two or more persons, and either should die without issue, the survivor should take. 4 Kent's Com., 277, (side page.)

We are of the opinion, that, when the cases are examined, it will be found that whenever a limitation over to survivors is held to be good by way of executory devise, they will be found to be cases in which the devisee or legatee in the first instance took an estate in fee or life estate only, and not an estate in fee tail, as in the case at bar; and we deem the cases of Threadgill vs. Ingram, 1 Iredell's Reports, p. 577, and Zollicoffer vs. Zollicoffer, 4 Dev. & Bat., 438, and Gregory vs. Beale, 1 Iredell's Equity, page 25, as falling within the above rule. Where there is a bequest of personal property to A and the heirs of his body, as in the case at

bar, the same language would, in a devise of real estate of inheritance, giving an express estate tail, and would give an absolute property in the personal property bequeathed, and any subsequent bequest over without heirs of the body would be of no effect, being too remote. 2 Roper on Legacies, page 1521–2–3. And certainly a bequest over to survivors would not have the effect to change a devise of this character, it being a fee tail to the first taker, into an executory devise, or a limitation not too remote. Salked vs. Vernon, 1 Eden. Rep., p. 56; Butterfield vs. Butterfield, 1 Vesey, Sr., 134, (and see note marked *m*, on same page, where it is held, that "where there is an express limitation of a chattel by words which, if applied to a freehold, would create an *express estate tail*, the whole interest vests absolutely in the first taker and the limitation over is too remote; but, where there is no express legal limitation, the Court will consider the intention of the testator.") Gray vs. Shawne, 1 Eden's Reports, 112 to 115; Boden vs. Lord Galway, 2 Eden's Reports, 173; see case of Houston vs. Ives, 2 Eden's, 129; Att'y Gen'l vs. Hird, Brown Chancery Reports, 156, top page; Bigge vs. Bensly, *ib.*, 174, top p.

In the case of Bell vs. Gillaspie, 5 Randolph's Reports, p. 273, Chancellor Kent says (see 4 Kent, 305,) there was a devise to the sons, and if either should die without lawful issue, was to be divided among the survivors, and that Justice Carr, in delivering the opinion of that Court, declared that the testator meant that the land given to each son should be enjoyed by the family of that son so long as any branch of it remained. He did not mean to say, " you have the land of C if he has no child living at the time of his death, but, if he leave a child, you shall not have it, though the child die the very next hour."

We beg leave to refer to a few of the many American cases which we think parallel and strictly applicable to the

case at bar. In the case of Sidnor vs. Sidnor, (2 Munford Reports, 263,) the rule was applied where the language of the will is identical with that in the present case, even to the word "survivors," and afterwards of Lynch and wife vs. Hill and wife, (6 Munford, 114,) is to the same point. We would also refer the Court to the case of the State for the use of Lester vs. Skinner, (4 Iredell, 58,) where the language in the will was almost precisely similar to that in this case. Here the Court said: "There can be no doubt that the words in the will would create an estate tail in lands devised;" and it is expressly on this ground that the Court decided that the limitation over was too remote, and that J. W. Russ took an absolute estate in the slaves. But, say the Court in this case, "an exception to the rule is where there are words superadded to those which, standing by themselves, would create an estate tail in lands, which superadded words would show and explain that the testator did not intend to create an estate tail in the chattels. The superadded words, doubtless, here alluded to are those designated in many of the cases put in 2d Roper on Legacies, 1623-4. It will be seen, by reference to the case of Anderson vs. Jackson, in 16 Johnson, that that case was disposed of on the same ground, and followed the case of Fosdick vs. Cornell, (1 Johnson, 440,) and that the opinion and decision in Fosdick vs. Cornell was made under a mistaken view of the English cases. This will appear by the dissenting opinion delivered by the Chancellor in Jackson vs. Anderson, 16 Johnson, who was on the bench when the decision in Fosdick vs. Cornell was made, and who says that that case was decided erroneously, and that the Courts of New York since then have done nothing but follow up the error ever since.

A limitation over of personal property cannot be made to take effect after the expiration of an absolute interest, whether absolute, expressly or by implication.—See will, items

2, 4, 5, 6, 7, 8, 9, 10, 11. The devises and bequests in these items are all either absolute, expressly or by implication. A valid executory devise or bequest cannot subsist under an absolute power of disposition in the first taker.—4 Kent's Com., 297 *et seq.;* 10 Johnson, 19; 16 Johnson, 537; Allen vs. White, 16 Ala. Reps., 181. This is because of the repugnancy. The property in many of the items of this will, where the bequest and devise is to J. W. Russ, Mary E. and Margaret B. Russ is to them in fee, is to them, their heirs and assigns. See the bequest to Jos. W. Russ; it is clear he was intended to be vested with such an interest as he could sell and assign. If so, what becomes of the idea that this will contains an executory devise?

We now take the position, that the last clause of the will is not to exclude the prior devises, if it is inconsistent with the general intention of the testator, which is plainly shown by the general context of the will, (2 Will. on Executors, p. 931,) disclosed by the several *independent* and *complete estates* described in *each separate item* of the will conveyed by full and complete technical and legal language.—1 Jarman on Wills, § 420; 4 Williams on Executors, § 931. See further, as to rule of construction of wills divided into items, 2 Williams on Ex., § 929 and 930; Randolph vs. Wendell, 4 Sneed, 668. As to construction of wills and doctrine of remoteness, Campbell vs. Harding, 13 Cond. E. C. R., page 101 *et seq.* 102; *Ibid.,* p. 84, Lepine vs. Ferard; 17 Vesey, page 479; Barlow vs. Saulter, 2 Dess., 111; 2 McCord's Ch., 323; 5 Richardson, 426; 1 Call's Reports, 160, docking entails; 1 Black. Com., 89; 2 Roper, 1527; 16 John Reps., 402; 17 Georgia, 280; 20 Geo., 699; 15 Geo., 122, 457.

*A. H. Bush* in reply.

In addition to the authorities already cited, I would refer to the following on the subject of executory devises: Beresford vs. Elliott, 1 Dess., 183; Logan vs. Ladson, *ibid.,* 271;

Reynolds vs. Calder, *ibid.*, 355; Clifton vs. Haig, 4 Dess., 330; Zimmerman vs. Wolf, 4 Rich., 329; Kelly et al. vs. Calhoun, 8 S. & M., 462, 470; Tillman vs. Sinclair, 1 Iredell, 185; De Treville vs. Ellis, 1 Bailey Eq., 40; Stevens vs. Patterson, *ibid*, 42; Mayzick vs. Vanderhorst, *ibid.*, 48; Henry vs. Archer, *ibid.*, 535; Feemster vs. Smith, Rice, 34; Finey vs. Branson, 1 Rich., 78; Yates vs. Mitchell, *ibid.*, 265; McClure vs. Young, 3 Rich., 559; Mathis vs. Hammond, 6 Rich., 339, 88; Carron vs. Kennerly, 8 Rich., 25; Perry vs. Logan, 5 Rich., 205, 206.

The Case of Hay vs. Hay, 4 Rich., 378, does not affect me injuriously. It went off on the illegal or void limitation to "the nearest heirs of his body of his mother's lineage."—See page 381; and the limitation was void for uncertainty, page 382.

In the case of Chaplin vs. Turner, 2 Rich., 136, the devisee took the property when he attained the age of twenty-one years.

Scanlan vs. Porter, 1 Bailey, 427, was a limitation over in a double aspect, and was void of course, if either took effect.

As to the distinction between real estate and personal property, see, in addition to my first brief, Dean vs. Slater, 5 Term R., 338; Dean vs. Shenton, Cowper, 411; Hill vs. Barrow, 3 Call, 302, 305, 311; 21 English Law and Equity, 369; 5 Rich., 202, 206, 214, top page; 2 Roper on Legacies, 1524, 1527, 1528, 1529, 1523.

But, it is said that the 14th clause of this will is void, because an express estate tail was created in a prior clause of the will. I answer, that here there is no *subsequent* limitation, but it is created at the same time and in the same will in which it is alleged that the estate tail appears. The signing of the will is " one act, done at one and the same time," and there can be *nothing in the will subsequent thereto.* The point made by the learned counsel is applicable to something that transpires after the execution of the will—to some

event or accident outside of the main design.—Atkinson vs. Hutchinson, 3 P. Wms., 259.

The whole will must be taken together.—See references already given, and especially I refer to Merritt and wife vs. Brantley et al., 8 Fla., 226; Session vs. Seabury, 1 Sumner, 235, *et vide etiam* Gibson vs. Gill, 2 B. & C., 9 Eng. Com. Law, 110; Wickham vs. Turner, 2 D. & R., 16 Eng. Com. Law, 96; Millen's Digest, (Geo. Rep.,) p. 709, § 2; Blamire vs. Gildart, 16 Vesey, 314; Westcott et al. vs. Cady et al., 5 Johns. Ch. R., 334, where a will and codicil were taken and construed together as parts of one and the same instrument; and it is sought to uphold this argument on the ground that each item in this will is a separate will of itself. An answer readily presents itself. The word "item" in a will is construed as a copulative conjunction, as "and" or "also," to connect sentences together. It is only used to distinguish the clauses of the will. But, in this will, the clauses are also numerically arranged. I refer to Reynolds vs. Calder, 1 Dess., 355; 1 Atkyns, 438; 6 Adolphus & Ellis, 166; 33 Eng. C. L., 108; Feemster vs. Roberts, Rice 34; 1 Jarman on Wills, 436; 3 Maule & Selwyn, 58; 5 East., 87.

The following cases will show that, even when estates tail were created, a subsequent limitation over was good: Laddington vs. Kine, 1 Salkeld, 225, and case cited already from 2 Call, 313; 2 Atkyns, 282 *et seq.;* 1 P. Wms., 432, 563, 98, an express estate tail male; 1 Bay, 78; 6 Term R., 30; 7 Term R., 589; 1 Johns. R., 440; 10 Johns. R., 13; 16 Johns. R., 382; 4 Dev. & Bat., 438; 4 Iredell, 225; 1 Iredell's Eq., 25; 2 Munf., 479, 482; 6 Munf., 455, 301, 187, and the South Carolina cases cited in the first part of this brief, and see 2 Roper on Legacies, 1527-8, 1522-3; Woodward vs. Glassbrook, 2 Vernon, 388; Brownwood vs. Edwards, 2 Vesey, Sr., 249.

And very many of the cases show that the limitation was

contained in clauses subsequent to the others.— *Vide* 1 Johns. R., 440; 10 Johns. R., 13; 16 Johns. R., 382; 4 Dev. & Bat., 438; 2 Munf., 479; 6 Munf., 187; 1 Bay, 78.

To avoid the effect of our statute abolishing entails, the counsel reads the case of Carter vs. Taylor, 1 Call, 165, construing the Virginia Statutes 1776 and 1785. Our statute simply abolishes entails, and of course repeals the statute *de donis conditionalibus*. The Virginia statutes continue it in force, and one of them has a restrictive clause abolishing all limitations and conditions in conveyances.—See 1 Call, 174, 184; Tate vs. Tully, 3 Call, 307; Hill vs. Barrow, *ibid.*, 297; Cruger vs. Haywood, 2 Dess., 422; Jones vs. Postell, Harper's Law R., 99; Morill vs. Mathews, 2 Bay, 397.

On the question as to when the limitation took effect, I contend that it did so at the death of Margaret B. Russ, and I refer to 7 Term R., 589; 3 Term R., 143; 1 P. Wms., 747; 3 P. Wms., 258; 3 Johns. R., 292, 298; 3 Dess., 163.

But it is said that an executory devise cannot be engrafted on a fee simple. In answer, I refer to 4 Kent, 269, 270; 2 Blackstone, 173; 1 Jarman on Wills, 781, and the many cases cited in my brief.

In answer to the objection that the limitation applies to articles liable to be consumed in the use, I refer to Covenhoven vs. Shaler, 2 Paige, 122.

It is said that a limitation over after the words "heirs of the body" was only applicable to trust estates. Higginbotham vs. Rucker, 2 Call, 313, placed it on no such grounds; and see Royall vs. Eppes, 2 Munf., 479; Zimmerman vs. Wolf, 4 Rich., 329, and many other cases cited, in which there was no trust.

Reference is made to Anderson vs. Jackson, 16 J. R., 402, to show that the first taker had a fee simple. This was a dissenting opinion of Chancellor Kent. The decision of the Court was the other way.—Page 437.

To show that the case of Watts vs. Clardy, 2 Florida R., 369, was decided without due consideration, I refer to 4th Kent, 221; Henry vs. Felder, 2 McCord's Ch. R., 342, and the other South Carolina cases cited in this brief.

The North Carolina cases, Whitaker vs. Brantley, 5 Iredell, 225, and Cox vs. Marks, *ibid.*, 361, were on wills made in 1803 and 1808 and decided under a statute of North Carolina which confined the construction to wills made since the 15th day of January, 1828.—Revised Code, 270. See, also, head notes of Lester vs. Skinner, 4 Iredell, 57.

The cases of Sydnor vs. Sydnor, 2 Munf., 263; Daniel vs. Williams, 12 Wheaton, 568; Guerry vs. Vernon, 1 Nott & McCord, 69; Henry vs. Felder, 2 McCord's Ch., 323, and others cited by the counsel, were cases where it did not positively appear that the limitation *must* take place within a life or lives in being. The limitation was not to the *survivor* simply as a personal benefit.

*J. M. Gorrie* on the same side.

FORWARD, J., after reading the statement of the case prepared by him, proceeded to deliver the opinion of the Court.

From the statement of the case, it will be seen that the complainant, who is a grand-child of the testator and the daughter of Wm. H. L. Russ, a son of the testator, who died in the lifetime of the testator and *before* his will was made, and who is the same person provided for in the *eleventh* clause of the will, where she is called "Mary Jane Russ," claims to be entitled as one of the next of kin to a distributive share in the estate which Margaret B. Russ took under the will of the testator upon the ground that the said Margaret B., by a proper and legal construction of her father's will, took an estate in fee in all the real estate and absolutely all the personal property which she derived from

said will; that in legal construction the words "heirs of her body," in the bequest in the 8th clause of the will, mean an indefinite failure of issue, and that, under this bequest, if the statute of this State for abolishing entails had not been passed, Margaret B. Russ would have been seized in *fee tail* of one undivided third part of the premises, real and personal, as one of the first takers, under the rule in Shelley's case, which is :

"Where the ancestor takes an estate of freehold, either legally or equitably, by deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or the heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."—1 Coke Rep., 93; 4 Kent's Com., 216; 2 Jarman on Wills, 243.

The word *heirs* is a word of limitation, i. e. the ancestor takes the whole estate comprised in this term.    Thus, if the limitation be to the heirs of his body, he takes a *fee tail;* if to his heirs general, a *fee simple.*

The defendants take the position, that, by a fair and legal construction of the will, all the property given by it to Margaret B. Russ, at her death became the property of her surviving brother and sister, Jos. W. and Mary E. Russ, under and by virtue of restricting words and expressions therein used, from which it can be collected that these words, "heirs of her body," are used in a more confined sense, whereby a precise time is fixed by the will for the failure, making it a *definite* failure of issue, *excluding* the bequest and devise from the rule in Shelley's case and bringing the same within the rule as to executory devise, which is, "that an estate cannot be entangled by executory devise beyond a life or lives in being, and the further period of twenty-one years,

and so much over as will meet the case of a posthumous child."—10 Bingham, 140; 4 Kent Com., 267.

It is contended, that the superadded words, in the 14th clause of the will, define the *intention* of the testator and should be made to supply the words "living at the time of the death" of said Margaret B. Russ, and construe the words "heirs of the body" to mean children.

It is argued, that, in construing the will, the whole will must be taken and considered together, and that the two clauses, the 8th and 14th, should be thrown into one. The two clauses of the will upon which the question of title depends, and are presented for our consideration, thrown into one, read as follows, viz: 8th item. "*I give and bequeath unto my daughter Margaret B. Russ, and the heirs of her body*, the following slaves: Penny and her three children, Elsey, Edward and Rebecca, Sarah Ann, David, Walter, Joe, little William, little Paul, Ben, Dinah, Susan, Anderson and Gib, and the future increase of said female slaves." 14th item. "*It is my will, that in the event of the death of Joseph W. Russ, Mary E. Russ or Margaret B. Russ, without heirs of their body of the one so dying, that his or her property be divided equally between the* SURVIVORS OF THEM."

The question for this Court is, whether the bequest to Margaret B. Russ comes within the rule in Shelley's case, or whether it will take effect as an executory devise?

The intention of the testator is the polar star to guide in the construction of a will, which intention does not depend on any particular clause standing by itself, but is to be gathered from the whole will taken together; and where the testator's intention is manifest it must prevail, if it is not contrary to some positive or settled rule of law.

The learned counsel on both sides have exhibited extraordinary research, and in their arguments and briefs have with great ability cited cases and elementary books which almost

15

exhaust the subject. As their briefs will be abridged and furnish the reporter to be printed with this decision, we hope we may be excused for enumerating only those authorities cited which are deemed essential in expressing the opinion of the Court and the grounds upon which their decision is based. Having laid down the rule for the construction of this will, the question is, whether there are expressions or circumstances, or both, from which it can be collected that the words "without heirs of the body," and heirs of the body, are used in a more confined sense, and therefore are not to have their legal signification: namely, death without issue generally.

The words "heirs of the body" are said to be words of art and import heirs *ad infinitum*, if nothing to restrain is superadded. To *restrain* here is meant superadded words which fix a definite time for the failure of issue, such as heirs *living at the time* of the death of the legatee. The rule in Shelley's case is not applicable where the testator used the word "heirs" in any other sense than the legal one.

This will of Joseph Russ, dec'd, presents the case of a father and head of the family providing for his entire household. He begins by making provisions for his wife, secures to her a life estate with remainder to his children, one of his sons being *then* dead but leaving a child, (the complainant in this suit.) He provides for the grand-child as he did with his own children. He also makes provisions for a stepson, and for his living children. Being, as it would seem, desirous that all who have equal claims upon him, and who stand equal in his affections, should have his property, he limits it "to heirs of the body," and by the 14th and final clause, superadded words to show that the benefit intended by him to his children was clearly future and contingent,, because they were to take as *survivors*, and as survivors. they were to take when any one of them should die without heirs of the body living at the time of the death. The pre--

·cise time is fixed for the failure of heirs. It was at the time of the death of any *one* of them. Who would be the *survivor* was a contingency. Could any one of the children have disposed of this property before this contingency happened, to wit: the death without heirs of the body living at the time of the death of one of them? No. Why? Because, up to the time the contingency happened they had but a life estate. The power of alienation was restricted by the intestate until the death of one of them. He entangled the estate of his children, but he did not entangle it beyond a life or lives in being. Thus he was within the rule of an *executory devise*.

In taking the will as a whole, what did the father mean? We think from the expression and situation of the children contained in the will, he meant to *give* this property to his three children mentioned in his said will: one-third to Margaret B., his daughter, and to her posterity, if she has any at the time of her death, but, if she has no children, (heirs of her body,) he then meant the property so devised and bequeathed should go to his surviving children Joseph and Mary, to be equally divided between them. If Mary had died first without children, then to be equally divided between his surviving children Joseph and Margaret; or if Joseph had died first without children, then to be equally divided between his surviving children. He limited the estate up to the death of one of them to a life estate. The contingency was the death of one of them, and the remaining two children, if they took the estate of the deceased sister at all, it was as *survivors*. It seems to us the testator said to his three children, who were equally dear to him: Now, if one of you die without children at the time of the death, then the two who shall survive shall have the share of the one that dies; but if "the one so dying" shall leave at the time of "his or her" death any child or children, then "*his or her property*" shall go to the children of the one so dying. Your right to the property "of the one so dying"

will be determined when the contingency upon which it depends happens, to wit: at the death of any one of you. Until that contingency happens, so that it may be determined whether you have the share thus willed to the one of you so dying, I restrict the alienation of any of your bequests. That is to say, you can none of you alienate the portion I have willed to you until one of you dies. *During the life of all of you in being* your bequests are entangled. Had he used the term "children" in his will instead of "heirs of the body," no one could have doubted his intention.

We think the intestate intended that if either of his three children should die without issue living at the time of the death of the one dying that the whole property devised to the three should pass to the *survivors* as survivors of them forever, to be equally divided between them.

Having thus defined what we think was the plain and manifest intention of the intestate, we are next to enquire whether this intention must prevail, or whether it is contrary to some positive or settled rule of law converting the intention of the testator to a *purpose altogether different* from what he intended? Here is the turning point of this whole case. There is no difference of opinion as to the law arising under the rule in Shelley's case. The multiplicity of cases cited agree on that. The difficulty which has arisen, and which so much bewilders Courts, is the application of that law; and here we would remark there is a difference between *exceptions* to the rule and *exclusions* from the rule.

It is observed by Mr. Hays, in his very clear and able essay on the disposition of real estate, that the cases which might appear at first sight to furnish exceptions to the rule are not cases of exceptions, but of *exclusions*—cases in which there was no such limitation as the rule intends.

It is said the words "heirs of the body" are words of *art*, and it certainly cannot fail to strike one who may take

pains to read the many cases where it is attempted to bring these words within the technical rule and thereby frustrate the purpose of the testator, that they are *artfully* used; and so common is the thought, where the words "heirs of the body" are used, that the sight alone of those words is enough, without further examination, to establish an *entailment*.

We think, if the rule as to executory devise be kept before us in expounding the will of Joseph Russ, deceased, there can be no difficulty of bringing it within that rule and excluding this will from the rule in Shelley's case. It will be seen, if we are right in the force to be given to superadded words, the essential quality to support an executory devise exists, namely, in definitively limiting the time when the contingency should happen, to wit: at the death of either of them without heirs of the body, clearly indicated by the words "*survivors of them.*"

Before entering upon the authorities which we think sustain us in construing this to be an executory devise, we will give certain rules to guide us, viz: The construction of the will is to be made on the entire testament, and not merely on disjointed parts of it, and consequently all its parts are to be construed with reference to each other. Hence general words in one part of the will may be restrained in cases where it can be collected from any other part of the will that the testator did not mean to use them in their general sense.—2 Williams Ex'rs, 927; Douglas, 327. Which was done in Merritt and wife vs. Brantly et al., 8 Florida, 229. See opinion of Chief Justice. See also other cases cited.

In the English Court of Chancery, decided as late as 1853, (see 21 volume English Law and Equity Reports, page 369,) the Vice Chancellor says: "Words importing a gift to issue, or a gift over on failure of issue, when applied · in a will to personal estate, receive a different construction from that which they would receive if applied

to real estate. This difference of construction, well established from the case of Forth vs. Chapman, 1 P. Wms., 664, has qualified the general rule that words which, if applied to real estate, would give an estate tail, when applied to personalty give the absolute interest. But the distinctions arising from this qualification of the general rule have, in some of the reported cases, unfortunately been overlooked. The reverse of this qualification of the general rule is that the operation of law, independently of express direction, makes real estate descendible, but makes personal estate distributable. The qualification of these rules has therefore been made in order to prevent the intention of testators from being defeated. A testator who gave personal estate to one for life and then to his issue, but if the tenant for life should die without issue, then to another, would, but for this qualification of the general rule, be held to give, not a life interest, but the absolute property to the person whom he described as tenant for life, and the issue, express objects of his bounty, would take nothing by gift from him. The principle of the qualification was to prevent the intention of the testator from being defeated. In a deed, the word 'issue' is a word of purchase. In a will, it is not *ex vi termini* to be construed as a word of limitation, but is, generally speaking, *to be construed as a word of purchase or limitation, as may best suit the intention of the testator.*" So in a will in the United States, where estates tail are abolished, the words "heirs of the body," when found in such a connection, whether the property willed is personal or real estate, or both, as to lead to the belief the testator meant to confine the failure of issue to a fixed time, the devise must be held good as an executory devise.

Having laid down these general rules, we proceed to the authorities.

In Hughes vs. Sayer, 1 P. Wms., 584, there was a devise of personal estate, and the surplus of it was given to two

nephews, and upon *either dying without children, then to the* *survivor.* The Master of the Rolls held the devise over good; for the devise must be taken to mean children living *at the* *death* of the party, and not a general failure of issue, because the immediate limitation over was to the survivor.

In Porter vs. Bradley and others, 3 T. R., 143, the Court held, that "If lands be devised to A, his heirs and assigns forever, and if he *die, leaving no issue behind him,* then over, the limitation over is good by way of executory devise." Lord Kenyon, Ch. J., in deciding this case, says: "If indeed only the first words, 'leaving no issue,' had been used, they, according to the opinion of Lord Macclesfield, in Forth vs. Chapman, must be restrained to leaving issue at the time of his death. And there are even additional words in this case, 'leaving no issue *behind him,*' which necessarily import that the testator meant at the 'time of his son's death.' Therefore I have not the least doubt but that this is a good executory devise, to take place within the time allowed by law, which is borrowed by analogy from legal formal limitations, namely for a life or lives in being."

In Roe ex dem. vs. Jeffrey, 1 Term. Rep. 589, the Court of King's Bench held that "under a devise to T. F. and heirs forever, and in case he should depart this life *and leave no* *issue,* then to E. M. and S., or the *survivor* or *survivors* of them, share and share alike, the devise is a good executory devise."

In Atkinson vs. Hutchinson, 3 P. Wms., 261, the Lord Chancellor says: "The dying without issue being confined to a life, makes the limitation over good by way of executory devise."

In a case decided in the English Court of Chancery as late as 1832, (see Ranelagh vs. Ranelagh, 2 Mylne & Keene, 441,) the words of the will were: "*In case of the demise of any of* *the above parties without legitimate issue, their, his or her pro-* *portions to be divided equally amongst the survivors:*" Held,

"that the presumption *prima facia* is that the testator had not in his contemplation an *indefinite failure of issue*." The Master of the Rolls says: Although the word "*survivors*" has been sometimes construed as synonymous with "*others*," where the context required it, that is by no means its natural and ordinary, far less its necessary import. The word "survivors" must be referred, not to the time of the testator's death, but *to the period of distribution*. The word "issue," as it occurs in this codicil, is synonymous with "children."

The words of the will in Forth vs. Chapman, 1 P. Wms., 664, were: "And if either of his nephews, *William or Walter, should depart this life, and leave no issue of their respective bodies,* then he gave the said premises to the daughter of his brother William, Jane, and the children of his sister, Sibley Price," upon which the question arose whether the limitation over of the leasehold premises to the children of the devisor's brother and sister *was void as too remote.*

Chancellor Parker said: If I devise a term to H, and if H die without leaving issue, remainder over, in the vulgar and natural sense, this must be intended if H died without leaving issue at his death, and then the devise over is good; that the word "die" being the last antecedent, the words "without leaving issue" must refer to that. Besides, the testator, who is *inops concilii,* will, under such circumstances, be supposed to speak in the vulgar, common and natural, *not in the legal sense.* The Court held this a good limitation to C, if A or B left no issue at their death.

In the will under consideration in the case of Glover vs. Monckton, 3 Bing., 13, there was a devise of real and personal estates, in the first instance for the benefit of the son and daughter of the testator, *until they attained twenty-one,* or the daughter married, and then to raise £5,000 for her, and then to his son, his heirs, executors, administrators and assigns forever, according to the respective nature of the es-

tates; but as to his real estate, in case his son should not live to attain twenty-one, and his daughter should be living at his decease, or in case his son should live to attain such age, and should afterwards *die without lawful issue,* then to his daughter for life, &c. The Court of Common Pleas certified to the Master of the Rolls that in their opinion the son took an estate in fee in the real estate, with an executory devise over in the event of his dying without issue living at his death.

Mr. Jarman, in his Treatise on Wills, says with reference to the principle in Glover vs. Monckton: The same principle probably would be considered as extending to any case in which a *dying without issue* is combined with an event personal to the individual, as the *event of his dying without issue* and unmarried, or without leaving a husband or wife, (which is the meaning of unmarried "in this situation.") The case of Doe ex dem. Johnson vs. Johnson, decided in the Court of Exchequer in 1852, (see 16 English Law and Equity Reports, page 552,) is another case in which "dying without lawful issue" was held a *definite* failure of issue.

Having noticed the English cases we will now turn to American decisions on this subject.

The early cases in Virginia made a difference in the restriction of limitation by superadded words between real and personal estate, and in the case of Royall vs. Eppes, 2 Munf., 479, held the word "*then*" in respect to a devise over of personal property, viz., negroes, a special word, that would justify the adoption of the restrictive construction.

In Dunn and Wife vs. Bray, 1 Call, 294, the devise was of slaves and real estate to W and his heirs forever; but if he die and leave no issue, *then* to C. This limitation to C, so far as slaves were included, was held good as an executory devise, and not too remote. The word *then* was construed to operate as a definite failure. The Court also held in this

case that in order to annex slaves to lands, it was necessary that *co-extensive estates* should be given in both. The next case was Seldon vs. King, 2 Call, 61, in which there was a divided Court, but the majority defined out of the case before them what shall be construed an estate tail and not an executory devise. The testator devised that if his wife be with child, and the said child *lives* and prove a *male child,* and lives to twenty-one years of age, a house shall be built, &c., and after the decease of his mother, then he gives *him* and the heirs of his body all his lands, houses and appurtenances, both real and personal, forever; but if the child proves a female, and lives till twenty-one or marriage, she shall have one-half his personal estate and all his lands to her and the heirs of her body forever. But if the said child should die, then he gives to his *wife* and her heirs forever all his lands, slaves, stocks of cattle, &c., and appoints her and her father executors of his will. The child proved to be a daughter. Held, that on the birth of the child she had a vested *remainder* in tail, with remainder in fee to testator's wife. Pendleton, President, differed with the majority of the Court as to the intention of the testator, and thought it an executory devise of the fee to the wife upon the contingency of the son's dying without issue under age, or a daughter dying under age unmarried, and which he says he conscientiously believed was his intention.

The case of Higgenbotham vs. Racker, 2 Call, 265, was next, and this case was not a will, but deed of gift, in which A makes a gift of slaves to his daughter and *the heirs of her body,* and, in case she died without issue—that is children of her body—the said slaves to return to the grantor: Held this limitation not too remote, and therefore is good.

In North Carolina, in the case of Garland vs. Watt, 4 Iredell's Law Rep., page 287, a testator, having several children, devised to his two sons, W. W. and R. W., a tract of land, to them and their heirs forever. In a subsequent

clause, after many previous devises, he devises as follows: "I will, that if any of my children die without issue, leaving a wife or husband, it is my will such wife or husband shall be entitled to one-half of the property, the other half to be equally divided between my other children or their heirs." Held, that the contingent limitations over were good, and therefore that W. W. and R. W. could *not convey an absolute and unconditional estate in fee simple free from these limitations.* This case is very similar to the one under consideration, and, among other things, sustains us wherein we say that neither Joseph W. Russ, Mary E. Russ or Margaret B. Russ could convey the devises to them until the contintingency happened, to wit: the death of one of them; that their estate was entangled for one life.

The case of Threadgill and others vs. Ingraim, 1 Iredell, 577, is another case in point. The restricting clause of the will reads as follows: "And if either of my children die without heirs lawfully begotten, then his or her part to be equally divided between my surviving children and their heirs forever." Held the limitation over in the will was not too remote.

Zollicoffer vs. Zollicoffer, Devereux & Battle's Law Reports, vol. 4, page 438, was decided in 1839. In the will before the Court in that case, a testator devised a certain tract of land to his eldest son, and the balance of his lands to his widow, all his sons and his daughters, and in a subsequent clause directed as follows: "At the death of my said wife, all the land and negroes that may fall to her shall return to J. Z., (one of his sons,) and in case of the death of either of my aforenamed children without a lawful heir, begotten of his or her body, that then his or her part shall be equally divided among the *survivors.*" It was held, that upon the death of J. Z. without children subsequent to the death of the widow, all the lands which he had acquired under his father's will—both that part which was given to

him immediately and that which was limited to him after the death of his mother—went over to his surviving brothers and sisters, and *that the limitation was not too remote.* Ruffin, Chief Justice, in delivering the opinion of the Court, says: "We do not, indeed, recollect that any will has been before the Court in which real estate was given over to a '*survivor*' upon the death of the first taker without issue or heir of the body. But, although there may have been no direct determination as to the effect of that phrase, we have a principle established, by adjudication upon cogent reasoning, which covers this case and sustains the limitation."

The case of Jones vs. Speight, 1 Car. Law Rep., 544, is approved, in which it was held that a devise over of LAND upon the death of the first taker "*without having issue*" was good. "It was so held," says Chief Justice Ruffin, "because the reason for taking those words in an artificial and technical sense in regard to land did not exist here, since the abolition of entails, more than in regard to chattels. Therefore, in a devise of *land*, we must receive them in their *natural sense*, as they had before been received, in both countries, in personal bequests."

The case of Brantly et al. vs. Whitaker, 5 Iredell's Law, 225, being cited by counsel for complainant, we will comment upon it when we take up that side of the question. It is sufficient to state here, that it fully sustains the rules laid down by the Court in determining this to be an executory devise.

In South Carolina, the leading case, Keating and wife vs. Reynolds, 1 Bay, 79, was as follows: A having two daughters, B and C, devises to each of them and to the *heirs of their body* forever certain personal chattels, *but* if they, the said B and C, should *die without having a lawful heir of their body to live*, then he devised the said chattels to be "equally divided to the survivors." B marries and has issue now alive; C likewise marries and has a child born alive,

but which dies a few days after its birth, and, after its death, C, the mother, dies without leaving any issue *alive at the time of her death.* The Court held that the limitation over to B was not a limitation *over after an indefinite failure of issue,* and therefore good.

As we think this case strongly resembles the Russ will under consideration, we may be pardoned for extracting some of the opinion of the Court. The Court say: "The will gives the negroes in question to Martha Thorpe, but upon the contingency of her leaving no *children,* (for the words 'heirs of the body to live' mean *children,* if they mean anything,) then to the *survivor.* This term 'survivor' is a term of much import here. It carries with it the idea of the longest liver, provided the other sister should leave no children behind her—that is, none living at the time of her death; for, if she had left a child, that child, or those claiming under it, must have taken. But, as there was none living, then she who should survive was the person to take. This, then, is not a limitation depending upon a remote, but a very limited, contingency—one which was to happen in a very short period during the life of a person then living, and cannot be called a limitation after an *indefinite failure of issue* to a person not then *in esse;* and the limitation over upon the contingency of her leaving no children, to the survivor, is a sufficient description of the person he meant should take, so as to bring this case within the rules of law in support of the limitation."

In Jones vs. Price, 3 Dess., 165, it was held, that where the intention of the testator appears to be plain that the devise over should take effect after dying without issue of the first devisee, the Court will give effect to such intention and not readily construe the limitation too remote.

In Clifton vs. Exrs. of Haig, 4 Dess., 330, a testator devised the residue of his real and personal estate to his daughter and the issue of her body lawfully begotten forever; but, in case

of the death or failure of issue of his son and daughter, then and in either of these cases, he devised and bequeathed the same to his nephews, S. W. and T. B., to be equally divided between them. Held, the limitations over are not too remote.

In the case of Badler vs. Harden, 6 Richardson's Equity Reports, 147, the Court held as above.

In Alabama, Pennsylvania and Georgia the same law is laid down.

In Mississippi, (see 12 Smedes & Marshall, 231, Rucker et al. vs. Lambdin et al.,) the words of the will were: "I wish the property which I bequeath and bestow on Sarah A. Treely to be given and secured to herself and her bodily heirs, should she marry, and at her death, should she have no issue, it is to go to her brothers and sisters." Held, that this was not an estate tail, but an executory devise.

The adjudications in New York arising upon devises of this kind were examined by the Supreme Court of the United States in Jackson vs. Chew, 12 Wheaton, 153, and found settled by a uniform series of adjudications that the limitation over was good as an executory devise. It is true Chancellor Kent differed from the majority of the Court in Anderson vs. Jackson, 16 Johnson. 397, and made a reference to Fosdick vs. Cornell, 1 Johnson, 440, and Jackson vs. Blanshaw, 3 Johnson, 289, which he says he decided or were decided on mistaken grounds, yet he did not succeed in convincing the Court that they were thus decided. On the contrary, they decided that the provisions of the will, which were, "It is my will that if either of my said sons should depart this life *without lawful issue,* his share or part shall go to the *survivor,*" was a good limitation over in fee by way of executory devise to the survivor on failure of issue living at the death of either of the sons. And, in the case of Lion vs. Burtiss, 20 Johnson, 483, decided four years after the case of Anderson vs. Jackson, the Court held

the same thing, notwithstanding the recantation of Chancellor Kent. The opinion of the Court in this last case was delivered by Spencer, C. J., and was unanimous—in which Mr. Spencer says: "*I must be allowed to say that subsequent reflection has confirmed my conviction of the soundness of the decision of the Court of Errors.*"

We will pass over the early cases in New York in which Lord Kenyon is said by Chancellor Kent to have been the blind guide that misled them, and rely upon the case of Moffitt vs. Strong, 10 Johnson, 16. This case was not repudiated by Chancellor Kent, but one in which he says he considered *fully* and decided "after great deliberation." The words of the will were, "*If any of the sons should die without lawful issue, then his part to go to the survivors.*" Says Kent, C. J., in delivering the opinion of the Court: "The intent of the testator, according to the settled legal construction of terms, appears then in this case to have been to provide for the surviving sons on the contingency of either of the sons dying leaving no issue at his death, and as this intention is consistent with the rules of law, the limitation over is good by way of executory devise." The rest of the Court concurred in the opinion.

In Connecticut, see Morgan vs. Morgan, 5 Day's Reports, page 517, by will in that case, A devised his real estate to his sons, B, C, D and E, their heirs and assigns forever, and added a clause to his will, that in case either of his sons should "die without children, his brothers should have his part in equal proportion." Held, that the limitation over was good by way of executory devise. Held, also, that by the words "die without children" is intended *a dying without children living at the death of the first devisee.*"

There were nine Judges who sat in the Supreme Court of Errors on the adjudication of this case, and were unanimous in their decisions. Edmund, J., in delivering the opinion of the Court, says: "The time when the contingency con-

templated was to take effect, if ever, was on the death of one of the four brothers, and not an indefinite period. This is apparent from the words of the disposition itself, 'And also my will is that if my sons should either of them die without children, *that his brothers shall have his part in equal proportion.*' Who, then, is to take on the happening of the contingency, that is, on dying without children? The words of the clause give the answer, 'his brothers shall have his part in equal portions'—brothers then in being, confining the operation of this disposition to the time of the death of one son, living the others, in direct opposition to the idea of waiting the event of an indefinite failure of issue."

In Hart vs. Thompson, administrator, in 3 B. Munroe's Kentucky Reports, page 487, the will was a devise to all the testator's children to be equally divided; "*but should either die without heirs of their body, lawfully begotten, that their part so allotted and given to them as aforesaid to be equally divided amongst my other children then living.*"

The Court say: "According to the strictest rule of English interpretation, we cannot regard the devise in question as a limitation over after an indefinite failure of issue, which would constitute it an estate tail, but as a limitation over upon a fee, which vests the estate in the surviving children, upon the death of either without ISSUE LIVING at his or her death, and is good as an executory devise." On the part of the complainant it is contended the testator *intended* a limitation over after an indefinite failure of issue, and therefore an estate tail; that there are no expressions or circumstances in the will, which, in giving them their legal import, would show the testator looked to the death of any one of them as the definite period at which the contingency should happen.

We have examined the numerous authorities cited by the able counsel for complainant and well considered the arguments urged in applying them to this case and the conclu-

sions urged, and while there are contradictory opinions which we shall not attempt to reconcile, they all agree that if there is anything in the will to authorise the change of the rule of legal construction of words, that then the Court should do so, to carry out the intention of the testator. As a condensed brief, with the authorities of counsel for complainant, will be published with the report of this case, we will only mention a few leading ones.

The case of Brantly vs. Whitaker, 5 Iredell, 225, was as follows: A, by will, devised land to his two daughters, H B and S B to them and their heirs, "and if they should die without an heir, *then* to his wife, B. One daughter died without issue. Held, that the limitation over was too remote.

But the Court say: "If the limitation over had vested on the event that the two daughters died without children, it would have been a good limitation, as that event must necessarily have been known during the life or lives of persons in being or twenty-one years thereafter. But the word *heir*, used by the testator, cannot be construed *children*, as there is nothing *in the will* to authorize us to change its technical signification." It will be observed that the Court intended that if there was anything in the will which would authorize the *change of its technical signification*, it would be done. In the case at bar we think there are expressions and circumstances in the will which authorize us to change the technical signification of the words "heirs of the body" to children, and fix the period of failure of issue to the time of the death. Whether or not the will authorizes such a change is the turning point in this case, as it is in all others where conflicting opinions have been given—*each case* depending upon the peculiar expressions and entire provisions of the will—and so long as the intention of the testator is thus arrived at, there will be apparent conflicting opinions.

In the case of Allen and Wife vs. White, Administrator

of Rufus Mills, 16 Alabama, 181, the peculiar expression in that will was, "*be kept for the maintainance of my son, his family and lawful children, which he now has or may hereafter have* and the *survivor* of them."

The wife of the son claimed the slaves as survivor. The Court lays down the rule of executory devise as we have and goes on to say: "Now, if the words '*survivor of them*' create a limitation good as an executory devise, the property may be tied up and rendered inalienable for more than fifty years after the death of all the parties in life who took an interest under the bequest, and in the event that Rufus had left two or more children living at his death it might have been more than fifty years before the absolute title would have vested in the one who survived all. The limitation, therefore, is too remote, as this estate was entangled for more than one life, and of course it is not within the rule of an executory devise."

In the case of Williamson vs. Daniel, 15 Wheaton, 568, says Chief Justice Marshall, in delivering the opinion of the Court, "*There are no words in the will which restrain the dying without issue to the time of the death of the legatee.* The remainder over is to take effect whenever either of the *immediate* legatees should die without a lawful heir of his or her body." Did the Russ will, which we are construing, rest entirely upon the 8th clause, there would be no doubt of the entailment; but, the 14th clause being annexed, we think there are *superadded* words which bring it within the rule of executory devise and entangles the estate · only for the life of one in being.

The case of Bells vs. Gillespie, 5 Randolph, 275, is contradictory to the view we take of the word "survivor." In that case, there was a divided Court, Judge Coalter thinking the words "surviving brothers," in that case, meant *at the time of his death*, and therefore the precise time for failure of issue was fixed, while Judges Cabell, Carr and

Green thought, by the use of those words, he looked to an indefinite failure of issue in the first taker and too remote.

Snyder vs. Snyder, 2 Munford, 263, is a case relied upon by counsel for complainant. It will be seen, upon examination of that case, that the question of *intention of the testator* was not touched upon at all, but the case was decided upon the strict technical rules. The words were not construed within any rule created for the purpose of supporting the *intention* of the testator, and so it will be found on examining most of the cases conflicting with the decisions in New York.

It is conceded that the construction of this will is a mere question of intention.

Lord Macclesfield declared that this technical rule of construing a dying without issue to import a definite failure of issue was created for the purpose of supporting the intention of the testator.—4 Kent, 285.

We have here, then, a precedent for construing "survivor" as used in this clause of the will to import a definite failure of issue restricting the 8th clause for the purpose of supporting the intention of the testator.

To return to the will of Russ. We have already seen it contains the essential quality to support an executory devise, if the expressions definitively limit the time when the contingency should happen, to wit: at the death of either of the children of testator. The question, then, is, are there expressions and circumstances of the will from which it can be collected that the words "without heirs of the body," and "heirs of the body," are used by the testator in a more confined sense.

First. It is evidenced by the will, that the legatees were to take in their character of *survivors*.

Secondly. The words of the 14th clause, taken as a whole, confine the contingency on which the limitation rests to heirs then in being. The contingency was to take effect (if

ever) at the death of one of the legatees. If they had to wait for an indefinite failure of heirs, what was the use of providing for a division of the estate? Again, as brother or sister, they might inherit under an indefinite failure of issue. If the testator intended that, why make provision for that which might, in due course of law, happen?

Thirdly. The testator, in the 11th article of the will, makes provision for the *complainant*, she being the daughter of the deceased son. By this he substituted her for the deceased son, and makes provision that if she dies without children, then her property is to go to Joseph W., Mary E. and Margaret B. Russ, and secures it from her husband, if she has any, but makes no provision for what she might receive as heir of either Jos. W., Mary E. or Margaret B., which he would have done had he contemplated she might by any contingency inherit any portion of the property given either of them. His grand-daughter was then in *esse*. He had reason to suppose she would survive her uncle and aunts. Were they or either of them to die, if he intended her to inherit, he would naturally have made provision for it in the eleventh item of the will. If he had intended to put his grand-daughter as "survivor" on equal footing as the representative of her father with his other children, he would have included her by name in the 14th item of the will.

In Crugar vs. ex'rs of Hayward, 2 Dess., 114, the Court say: "All cases on the construction of wills depend on the particular penning of the wills themselves and the state of families to which they relate."

It is urged, that in some of the items of this will, where the bequest and devise is to Jos. W. Russ, Mary E. or Margaret B., it is to them their heirs and assigns, and it is asked, what becomes of the idea that this will contains an executory devise? The answer is that the *latter* clause will prevail.—Finly vs. King, 3 Peters, 366.

It is contended, on the authority of Barlow vs. Salter, 17

Vesey, Jr., 479, that the word "survivor" should be understood as meaning only *others.* It has undoubtedly been so construed, but it will be seen that Courts have construed it to fix the period of failure of issue. The construction of this, like other words, is governed by the expressions or circumstances contained in the will. It is insisted, that as the testator, by the use of the words "heirs of her body," in the 8th item of the will, created an estate tail in the first taker, that therefore we cannot superadd the words in the 14th item to show that he did not mean those words in their legal sense. If this is so, what becomes of that fundamental rule in the construction of wills, to wit: *that the intent of the testator must govern the construction?* It is by adding the last clause that we ascertain whether the testator meant the words "heirs of the body" in their legal sense, or whether he has used improper words, which he intended to use in another sense, i. e. *children.* We think the testator evidently meant to say "her children." The words "heirs of the body" have been construed children.—3 Atk., 781; 1 Ba. & Ald., 713; 1 Bay, 85; 2 P. Wms., 342; 1 P. Wms., 229, 230; 20 Johnson, 483.

It is contended, that the case of Watts, adm'r, vs. Clardy, 2 Florida, 369, settles the question in dispute in this cause. We do not intend any conflict with that case. That was a *deed* in which the word survivor is inserted, and the rule of construction of a deed is much more strict; besides, there are no such expressions or circumstance in the context of the deed or will in that case, and superadded words relating to the grantee, as there are in this case to the legatee. We are therefore satisfied that, according to the settled legal construction of terms, evinced by weight of authorities, the testator (Russ) intended in this will to provide for his surviving children on the contingency of either of them dying and leaving no issue at the death of the one so dying, and as this inten-

tion is consistent with the rules of law, the limitation over is good by way of executory devise.

It is therefore ordered, adjudged and decreed, that the decree of the Chancellor in the Court below overruling said demurrer be *reversed*, and said bill be dismissed. But, under the circumstances of this case, the bill being for a construction of a will in which both parties were interested, it is further ordered, adjudged and decreed that the costs, including those in the Court below as well as in this Court, be paid by the administrator of the estate of Margaret B. Russ, deceased, out of the assets of said estate.